Good afternoon, Illinois, public court 1st district court is now in session. The 6th division, the Honorable Justice Carl a Walker presiding case number 2, 4 dash 1, 4, 8, 1 mirror bail Mandel versus chemo. And good afternoon everyone. I am just this Walker and I have here with me today. This is a really a potential key and just to fill your cameras. And we are going to ask if each of you could please take a moment and introduce yourself. Let's start with the appellate. Good morning. Your honors. My name is Lawrence is the Darcy's. I am the attorney for David. The plaintiff. Your honor, good afternoon. Your honor for the defendant, a colleague, John Gardner, Michael Reese's are from Amundson Davis. Good morning. I'm Elizabeth for the remaining 6 defendant appellees. My last name is B. A. R. T. O. L. U. C. C. I. Thank you and thank all of you. And Mr. how much time did you want to leave for rebuttal? You're muted. You're muted. Sorry. Sorry. Your honor. There's the issue of the cross appeal. I believe we get 20 minutes on our. Argument in chief, the question is, is where we get additional time to respond to the cross appeal or how do we, how do we allocate that time? Well, I kind of see it as that as they're arguing, they will argue the, they will argue their reply for the response brief to you. And once they're done, they can then just let us know that they're going into the, the motion, the, the, the cross, the cross appeal, I should say. So, then you can respond to both when you're done. I wouldn't need time. I wouldn't need time to reply, respond to the cross appeal as well as to reply regarding my, my appeal. So, how about we do this? We're going to, we're going to 1st of all, we need to figure out the time in terms of what the, what the are doing and I'll come back to you in a 2nd. We tell you what your plan is for the police. Yes. Your honor for John Gardner and I will be the 1st, 1 presenting argument for my client is the. 5 minutes depending on questions. I think 5 minutes could do it. Okay. And Mr. you're muted. Thank you. Your honor Mr. and I discussed this assuming. 20 minutes for all the funding to tell you, so I would have, I would take the 15 minutes remaining in that allotment. Okay, and to all of you, we're going to be a little bit with the time. So, if you need to go a little bit over, it'll be okay. We won't hold you. We won't say hard and fast with the 20 minutes on each side. So, and so what I'll do Mr. same with you, I'll save you 5 minutes for your rebuttal. And that'll be the bottle to everything and if you need to go over, it's fine again, we're not going to hold hard and fast to that rule of the 20 minutes. So, I think that'll help everybody kind of get through this and we won't it shouldn't be any difficulty. That might I ask there's only 5 minutes for rebuttal. Should I get to the slap argument in my 20 minute if we have time, depending on questions with your initial 15 minutes? Is that what you're speaking to at the top? Well, I'll give you 20 at the top. Okay. And then you'll, you'll have 5 on the end. Again. We're not going to be hard and fast with the time. Okay. You'll have the 5 at the end and that same thing goes for Mr. and Mr. Okay, all right. Everybody's good with that. Go ahead. You're concerned just confirming. So we would not have rebuttal time on our cross appeal. We will get 1 time to talk. Well, yeah, because he's going to speak to his. He's going to be responding to your cross appeal in his 1st opening. So you'll have a chance to respond to what he said there. Okay. I just said, yeah, so I think it'll be okay, but we'll work it out. Just let us know if there's a difficulty and if we come to the end, and there's something that you really need to respond to this applies to everybody. Just let us know that. And we're pretty pretty liberal with this. Okay. Okay. I think that we want to just make sure that everyone has a chance to say what needs to be said. We also point out that we've read all the briefs. We've read the cadence. We've read the record. So, our general advice is to start with your strongest point and work your way down. That might not be how your briefs are organized, but it seems to be the most efficient way to deal with the real argument. I agree. Okay. So, you can go ahead and just. Thank you. Thank you. May it please the court again? My name is Larry. I am the attorney for the plaintiff. Maribel Mandel and David Mandel the name briefly. The nature of this case is that's a complaint for common law defamation Maribel Mandel was a North Riverside trustee running for the position of village mayor in the 2021 election. Local municipal cycle for North Riverside. The 7 defendants were all operatives of the VIP or United Party, which was then the administration that was in power in North Riverside at the time. All of the defamation that took place is laid forth in the, I guess, all 7 of the defendants in the multi count complaint happened between January 2021 through election day, which was April 7th of 2021. We filed in January of 2022, this particular action, the complaint for both defamation and intentional infliction of emotional distress. The motion, the complaint was attacked by a motion to dismiss in July of 2022. it was fully briefed and you want to go ahead and get to your argument. We pretty much all the things. Okay. Thank you. It was, it was fully briefed the main issues. Of this case in our, in our appeal with dismissals by judge Cushing in his memorandum order of January 31st of 2024 the those were dismissed on common law principles of substantial truth as well as non actionable opinion. However, before that, that would be the main substantive nature of our appeal. So, give us an example, then Mr. of what 1, 1 of the claims that would have been dismissed in January 30th or January 31st order and that you believe was in fact, a fact that shouldn't a false fact that should not have been dismissed. Okay, you're on let's deal with the substantial truth document with the basis of the only basis by which judge Cushing dismissed with under the substantial truth doctrine. Was a dicta that was in a 7th circuit. Court of appeals case regarding the sentencing order of Mr. Mandel. Uh, some 20, 20, some years ago, and we're familiar with that too. We realized that the 7th circuit made a comment about her being involved with her husband's activity. And I believe they even called her a criminal. So go ahead. What they did was is basically it was, it was dicta and they didn't reach a decision as to the facts of that case. They basically said, hey, we don't find the lower court being erroneous. The trial court had looked at the pre sentencing order and had labeled her as a criminally responsible participant, as opposed to an unknowing facilitator. The court even went on to say that wasn't ruling on that issue. It was not part of that case and they didn't even reach that issue, but they did make that statement. Judge Cushing basically took that statement, those 3 words, criminally responsible participant, and then applied them to virtually every time. Every statement, the defamatory statement made against Ms. Mandel some 20 years later. All of those statements were made without reference to the underlying, without reference to the underlying evidence that Ms. Mandel was involved in her husband's activities, and that's what the trial court did, because the judge said that when, for instance, when Mr. Crockmill at two public meetings called Ms. Mandel a bad man for her husband on numerous occasions, and a criminal and a thief, the court, Judge Cushing says, well, because they said that she was a criminally responsible participant in her husband's fraudulent matter 27 years ago, there's substantial truth to that. The second thing would be Mr. Ranieri. When he said that she was an embezzler, do we want an embezzler who's a trustee to be able to potentially embezzle more from the township, from the town? He used the word embezzler, and Judge Cushing said, well, because the appellate court said she was a criminally responsible participant in an out-of-context situation, that's substantially true. What Judge Cushing, however, those are two examples. The other ones are use of the word thief throughout the matter, the word criminal. When the substantial truth doctrine is used, both the lower court, as well as the defendant, fail to recognize the fact that in order for something to be considered substantially true for the substantial truth doctrine, it has to relate to an underlying truth. All of the cases that they have cited do not do so. All of the cases cited where there was a, let's say, a word that was misused, for instance, when one of the newspapers used the word arrest instead of a warrant, when one of the papers said something along the lines, used the word kidnapped, as opposed to a violation of the Child Abduction Act. That was the Harrison case versus the Sun-Times. The heart of the substantial truth doctrine is that items have to be of secondary importance. Inoffensive details, irrelevant details, or matters that are immaterial to the underlying truth. Bottom line, though, is they all have to be stated within the context of the actual truth that was being stated. Now, if any of these individuals have said, Ms. Mandel was found to be a criminally responsible participant in a federal case of her husband 20 years ago. Let's jump ahead a little bit, though. How did you get to damages there? Tell us why there would have been damages. Well, there were substantial damages in that calling somebody... Damages to reputation. Damages to her reputation. She was running for public office. She was currently a trustee. To be called a criminal, to be called an embezzler when you're a public official, to be called a bagman, which comports everybody who knows what a bagman is, it's somebody who takes money illicitly for somebody else. An embezzler misuses money that is held in a public trust. She held a public trust as a trustee. She was running for mayor. You know, her damages, when she ran for trustee, again, she lost. The damage had been done. You can't unring a bell. The bottom line would be, as well as she was in the business of managing properties and her and her husband were in the real estate business, when somebody places on a public website and a forum, the North Riverside Community Concerned Citizens Forum, that you are a criminal, a thief, an embezzler, a bagman, these impute criminality, their defamation per se, and we don't need to get to prove the damages. At that point, the damages are implied. And even Judge Cushing, even though he dismissed these particular claims, said that there was a damage, that they were per se. However, he dismissed them because he says that the one fact 20 some years ago, even though it was taken out of context, and it was not clear that there was what the underlying truth was, as to those other matters, he dismissed them under the Substantive Truth Doctrine. What evidence establishes falsity in the various categories of statements? Tell us where the evidence is. There's evidence of falsity in that when they called her an embezzler, and when they called her a bagman, and when they called her a thief, the only evidence that the court had in front of it, because this was a 2-619 motion, was the complaint. There was no answer. There were no affidavits filed by the defendant. There were two affidavits filed by my client. And basically, the truth of the matter is that Marybelle Mandel uncontrovertedly states that she's never been charged with, arrested, or convicted of any crime, let alone embezzlement, let alone being an illegal bagman or a thief or anything else. What we have here, which brings it to what we have here, is a 200-page motion to dismiss that includes 25 exhibits. Now, normally that wouldn't make it, normally unverified, unsubstantiated, unsupported, irrelevant exhibits like this, a person in a black robe listening to a motion can ignore it. We ask that it be stricken for one purpose. So how do we distinguish factual assertions from opinions? Because if someone has an opinion about someone and they express an opinion, that doesn't quite get us there. Well, that brings us to the second point. First and foremost, under the substantial truth doctrine, let me just say this before I move on to the directly answered question. Under Harrison v. Sondheim, the substantial truth doctrine are normally always a question for the jury. To decide whether something is related and substantially true, a jury should decide that, unless there's no reasonable jury could have concluded otherwise. Now, which brings us to whether something is an opinion or whether it's actionable. That brings a second area where Judge Cushing expanded Illinois jurisprudence with respect to whether something is actionable or non-actionable opinion. Contrary to the assertion of the defendants, there is no immunity for public figures. There is no immunity in politics. The Seif case proved that. And we can go back as far as Catalano, which I'm very familiar with, because that was a Berwyn case. And I was an elected official in Berwyn for many years after that happened, but the Illinois Supreme Court in the Catalano case said there are no special rules for politicians. If you defame a politician, you've defamed them and they have an actionable cause of action. The difference is, is what's opinion. And in the imperial imperil case, following the Catalano case, it basically has determined the three ways that we look at all these things as to whether it's opinion or actionable. Is it precise and readily, does it have a precise and readily understood meaning? Can it be verified as true or false? And what are the context signals that it has factual context? Now, in this particular case, when you call somebody a bag man or an embezzler, those have very specific understood meanings and they're verifiable as true or false. And we have determined through the affidavit, which is uncontroverted, that she's never been accused of anything like that. Never been arrested for, accused of, convicted of, the embezzlement, thievery, burglary, anything of that nature. It infers that there's a factual context. When somebody says she's embezzled before, what makes you think she won't embezzle again? That's fact based. The reasonable reader of that blog is going to say, wait a second, what are you referring to? What are we talking about? Now, as pointed out in the Imperial Apparel case, which was a Supreme Court case in 2008, it listed many things that are just blather, opinion, you know, loose, figurative language that we talk about. If you call somebody, oh, you're a traitor, or you say, oh, that's a rip-off artist. Oh, that information is scandalous. Well, the one thing that says, oh, their advertisement is like a hooker's come on. It's a snake oil job. It's, you know, that person is trashy. All those types of things would be considered, and Judge Cushing even said, hey, there's a California case that says when you call somebody a crook, that's the same as calling them a criminal, but it's not. The California case talked about the crook comment was when somebody said, oh, that person is the biggest crook in the world. Obviously, that's an opinion that can't be verifiable as truth or false. But when you call somebody a criminal or an embezzler, it infers facts. And those facts clearly, or when you say they're a forger, in this case, somebody called Maribel, are you going to forge some other documents? And, you know, and the fact that one of the defenses was, well, and Judge Cushing even said, oh, it was put in the form of a question. Are you going to forge something else? Or do we really want an embezzler here? Well, the court in Sulea. Well, I think that you have the innocent construction rule, and I guess the question for you would be, how do these alleged statements survive Illinois' innocent construction rule? Well, in the first instance, they were not dismissed with respect to the innocent construction rule. The judge did not rule so on that case. He ruled it on the fact that a First Amendment opinion testimony. There is no, plus there is no innocent construction. We pointed out in our briefs, you know, what the average reasonable person would look at when you say what an embezzler is. There's no innocent construction to embezzlement. There's no innocent construction to being a thief. Well, you said it was in the form of a question. If the question is asked, are you going to embezzle again? That could almost be a joke. Well, but that infers that you embezzled the first time. And the fact in this case is there's no embezzlement. That's like the old question, you know, have you stopped beating your wife? You know, whether you say yes or no, you lose. The court in Shalaya said insinuation, irony, questions, you can't cover up a factual based defamation by just posting it as a question. That's pretty clear in the law and the Supreme Court. I think Jesse Gammis has a question for you. I was just going to say, but where is the direct accusation of committing a specific crime? Because that's really what it takes for defamation per se. So, calling somebody a thief in general, I don't think gives rise to defamation per se. Does it? Because it's not directly or expressly accusing that person of committing a specific fact based crime. Well, yes, it is. I would beg to differ in this respect. When you call somebody a bad man numerous times, that is telling, that is, a reasonable person would read that as saying that you've taken money from people for something else, for some wrong purpose. That's a really specific definition of bad man versus saying somebody is a scoundrel or somebody is a, you had given some examples earlier. I don't see the distinction. Bad man is not like a specific term of urge that somebody would not think is, you know, just kind of a hyperbole and derogatory. No, it infers that you're using, that you're taking money from somebody for somebody else. Embezzlement is a very specific crime. When you say that you stole, you're a thief because you stole an old lady's house and you preyed upon the elderly, that is a specific fact based defamation that was put in this case. That is correct. When you call someone a thief, you're accusing them of having violated 720 ILCS 5 slash 16-1, which goes from a class A misdemeanor to a class X felony. Was Ms. Mandel ever convicted, arrested, tried, or sentenced to anything for violating that statute? No, she's never been charged with, arrested for, convicted, or even acquitted of any crime. Never. No crimes. Same thing with respect to forgery. Same thing with respect when I said he preyed upon the elderly. Well, actually the preyed upon the elderly, Judge Cushing said that that was a defamatory statement because it was a fact based allegation. And these things are different than when you say, hey, you're corrupt. All politicians are corrupt. Those are generalizations. But when you say somebody's a thief or an embezzler, those are very specific. Embezzlement seems to be under 720 ILCS 5 slash 16-1. Goes from a class A misdemeanor to a class X felony. And it's itemized in 21 business related statutes, which I thought was really interesting. Going to Laura Berscheid's statement that she ripped off an 80-year-old man, that would be a violation of 720 ILCS 5 slash 17-56 and also 320 ILCS 20 slash 20 paragraph A dash 1 and paragraph F dash 1. Was she ever arrested for, accused of, tried for, convicted of, or sentenced of a violation of either of those statutes? No, never. And they tried to reference that she abused an 80-year-old man where Judge Arnold in the Circuit Court of Cook County found in her favor when there was a contract dispute over the purchase of a home that Miss Vandell was attempting to purchase. They claimed that she preyed upon an 80-year-old man. And Judge Arnold found in her favor and said no. The exact opposite was true. Right. Well, the 720 ILCS citation is for financial explanation. 320 ILCS is for elder abuse. She was never convicted of either of those. Never accused of or of any of those. They said that she had a property in Summit that was demolished for being unhealthy and unsafe, and she never owned that property. She was listed in the title report because she at one point had an interest in potentially buying it, but that purchase was never consummated. So she never owned the property. Okay. When Brent Bernal accused her of preying upon a senior and coercing a widow into signing a contract, those two sentences would also be violation of 720 ILCS 5-17-56 financial exploitation of a senior. Was she ever arrested for, charged with, convicted of, or sentenced for violating that section of the Illinois law? None of the above and never accused of that either. Which is why we had a problem and asked that they let them. Let me ask you, though, how does the analysis change given that Ms. Mandel is a public figure? The analysis doesn't change at all. There are no immunities and privileges. Contrary to the assertions of the defendant in the motion dismissed, they tried to say, well, she's a public figure. This is what politics is about. You got to toughen up. But that's a legitimate argument. That's what I'm asking you to respond to right now. I understand. But in Seed versus the Sun-Times in 2007, the court said, even if it's political in nature, it involves no special rules. There are no special rules when you're dealing with a politician, even though that politician is a public figure. If you defame them, you defame them. The difference between a public figure, if we go back to New York Times v. Sullivan, is oftentimes you would have to show that there was reckless disregard for the truth in putting those falsehoods forward. You cannot negligently defame a public figure. The same would be for politicians. But there are no special rules for politicians. Yeah, you got to toughen it up when you run for public office, because lots of things are said about you. But you can't say that somebody is a criminal. You can't say that somebody is an embezzler or a forger or any of those things. The whole purpose why they did this, the whole purpose why all these unverified, unauthenticated documents were put in here, why we asked Judge Cushing to strike it, we found out what the reason was. The attorneys doubled down on this concept that being a politician, you can say anything about them. That was their game plan. They wanted to make, and they even said it in their motion to dismiss in the appendix at pages 84 and 85, that the whole purpose was that the man down should be defamation proof. They analogized them to be like the mafia hitman who wrote a book, who then sued somebody for defamation. They say, you can't be defamed, you're a mafia hitman. They tried to analogize that the Mandela's were mafia hitmen. Then they turn around and they bring in, they shake the dust off of this doctrine, the incremental harm doctrine, that basically says if we make your reputation look so bad, that these falsehoods added to whatever already your reputation is, you can't be damaged, which is ridiculous. There's nothing, but how did they do that? Tell us this, Mr. Zaleski, what authority you believe most support your position that the statements are in fact actionable? Statements are in fact actionable based upon every case cited by me and every case cited by Judge Cushing and every case cited by the defendants. What they've done here is taken and expanded the concept of substantial truth and opinion beyond all reasonable realms. Every case cited by all the parties, as well as by the underlying, the court below, support our position. In terms of the opinion testimony, whether it's opinion or actionable or not, we have readily definable situation that's very viable as fact and based upon the context. In terms of substantial truth, none of what they have said here and what the judge ruled there, none of those comments relate back to the original truth that was supposedly, it was substantially true about. So what we want to do, Mr. Zaleski, is we want to give you time to respond to the cross appeal. You can go ahead and do that now. Okay. The cross appeal is under the Slab case. Judge Cushing found that this was not a Slab case. And he ruled that this was not a Slab case for obvious reasons. It's not a Slab. It's a three pronged test. We have to first show that there is a right contemplated by the act and political speech, we would all agree. And we can see that political speech in the part of a campaign is contemplated by the act. So that's the first prong of the test. However, the defendants also have a burden under the second prong of the test, and this is where they get into real trouble. They have to affirmatively demonstrate that the claim of the plaintiff is meritless and filed for the sole purpose of retaliation. Now, the defendants say, well, of course it's retaliation because she lost the election and she retaliated by filing this lawsuit. And that's clearly not the case because if that were the case, every piece of litigation is retaliatory. Clearly by the complaint about what the court had before in the complaint and in the affidavits of the plaintiffs, that was the only thing, none of the other affidavits, there were no affidavits by the defendant. They claim damages, they've shown damage to reputation to their businesses, and so clearly their claims cannot be viewed as meritless. So we don't get to the third prong of the test, which would require then the plaintiff to show that it was not solely retaliatory, and it clearly isn't solely retaliatory. Now, if we look at the, they seem to argue that there's this fourth district case in Anderson that puts forth a new standard. However, in our case, the first district here follows Sandholm and his progeny, which include Garrido and Glorioso, where that analysis clearly would show that this is not a slap case. There is, and two of the things that would help to show whether it was meritless or retaliatory are the timing situation. In this case, this case was filed over a year after, almost a year after the election. That's number one. So it was not filed to stop them from speaking during the election cycle, which is what a slap would have done. Most slap cases are you file a lawsuit to stop somebody from speaking. In this particular case, the election was already over, long gone. The damage was already done. And so it was not filed to stop whatever speech was going on. So that, number one, the timing of it is extremely important. And plus you add to the fact that they filed a motion to dismiss in July. I mean, in July of 2021, I'm sorry, July of 2022. And they did nothing to bring it to hearing a resolution for over a year after that fact. Even Judge Cushing said, wait a second. You know, that doesn't sound like a slap because you're supposed to want to have an expedited review to stop the onerous nature of a slap lawsuit. This does not look like a slap. It doesn't fit the paradigm in the political sense. It would be very difficult. They've been able to point to no cases that would show that in this particular case, this would fit the normal paradigm of a slap lawsuit. Any questions in that respect? No, no questions. Did you have anything else? There are several other small matters that are in the brief. We would stand on our briefs with respect to that, or if we have time in the brief rebuttal. But we've covered the major points. Thank you. And who's going to go first? I think I am, Your Honor. Okay. Good afternoon. And may it please the court, counsel. My name is Mike Reese and I'm here today on behalf of Mr. John Gardner. Mr. Gardner posted one statement about David Mandel to the North Riverside Concerned Citizens Facebook group. It was in the midst of the village mayoral campaign in 2021. Gardner posted that Mandel, quote, makes a habit of threatening and harassing our waste disposal workers to the point the Roy Strom Company had to write a letter to our village pleading for help. Close quote. That's the statement. You haven't heard any argument about it today until now. Mandel complains the statement was defamatory per se and intentionally inflicted emotional distress. The trial court ruled that the statement was not sufficiently specific to be actionable within the commission of crime category of defamation per se, that it was opinion and dismissed counts three and four in this favor under section 2615. So you have no issue as to striking exhibits. You have no issue as to proof as a substantial truth as a defense. It was just on the four corners of the complaint. Mr. Reese, isn't harassing anybody, including public employees, a violation of 720 ILCS 5-626-5-2, which is a class B misdemeanor? First of all, I'm not aware. The question is, was Mr. Mandel ever arrested, charged with, or convicted of a violation of that statute? Well, first of all, that statute has not been cited either in the complaint or the opening brief.  Are you suggesting that the court can't look at statutes that are implicated by language? Well, what I'm suggesting is that it helps if the argument is supported by legal authority. And my understanding is, I know that Mary Bell Mandel is a public official. I don't know that Mr. David Mandel. No, he's just a private citizen in this case. And he was accused of threatening and harassing public employees. And the law is very specific that harassment under the Illinois Human Rights Act and also 720 ILCS 5-26-5-2 can be a class B misdemeanor. And you've answered my question. He was never arrested, charged with, tried, or convicted for a violation of that statute. So, clearly, he was not saying that he harasses public employees was not a true statement. So, the Royce Farm Company is private. It's not public. So, the fact that they were hired by the company is hired by the village to do waste management. And the allegation is that Mr. Mandel was threatening these employees, these private employees, which incidentally would still come under the harassment law. Well, the general harassment law requires either telephonic communication of a threat telephonically or electronically. Well, I'm just talking about general harassment. Okay. And as far as what you're saying about the sanitation workers, it's still private. They're not, they're not, they're, I don't know. They're still people. Whether they're public employees or private employees, they're still people. I thought the statute was, I thought you told me the statute was addressed to public officials. No, I was, I was just referring to the language that was used that he threatened to harass public employees. The statute talks about people can't people. So, so the statement was harassing our waste disposal workers. It wasn't saying that they were public. And honestly, this was honestly, this was never argued. It was never argued below at any time. I'm trying to figure out how, if he was never arrested, charged with, or convicted of harassing anybody, a public employee or a private employee, then that statement is not true. What I'm saying is that harassing and threatening has a broader non-criminal meaning. But you're also communicating that he violated a law, which he did not because he wasn't arrested for it. Well, okay. All I can say is the argument was never made in those terms. And as a matter of fact, if you talk about commission of a crime, the only thing he was talking about was assault. A different crime. And he didn't even really say assault. He said such as assault. So, he never even limited himself to assault. Mr. Mandel charged with arrest or convicted of or sentenced for assault. Absolutely not. Of course he wasn't. And so it was, it was not a true statement. He didn't violate a law. Excuse me, excuse me. So, to have an assault, you have to be able to place someone else in reasonable apprehension of receiving an immediate battery. Where in that statement is there any reference to facts that would give a reasonable reader the idea that the sanitation workers were in reasonable apprehension of immediately receiving a battery? Was there any, what was the threat? A reasonable reader would look at that and say, oh, my God, he violated the law. He should have been arrested. He assaulted someone. Any particular law? Or is that a matter of guess? So, the idea of defamation per se is you have to have something precise. Not something that is, quote, the law. Right? I think that it is easily believable that if you say someone has violated the law in Illinois by assaulting someone or harassing someone, that that gives the impression to the average reader that this person has broken the law. And there's no proof that he did. So, it can't be a true statement. It can't be substantial truth because there is some substantial truth. I'm not arguing substantial truth, Your Honor. I'm arguing, first, it's subject to reasonable construction. And second, I'm arguing opinion. The statement didn't even use the word assault. The statement didn't use the word assault. And we've cited two cases, Richardson v. Dunbar and Tobias v. Oak Park River Forest High School by comparison. Let me read the statements from those cases to you. Richardson's statement said, sorry? We've read those cases. That's right. And the statement was, the police chief grabbed the police chief by the shoulder and tried to turn him around. That did not imply the commission of the crime of aggravated battery, even though we're talking about a police chief. And somebody laying their hands on the police chief, not actionable. Then we have Tobias. In Tobias' statement, the plaintiff physically assaulted him by grabbing his arm and trying to force him into a room. Was it actionable as the commission of a criminal offense? It was not. Mandel's allegations here are even less specifically factual than the statements at issue in Richardson and Tobias. If the statements in those two cases are not actionable, where you have more facts and you even have a public official, then the statement here cannot be actionable. What is the threat? Is it a threat of bodily harm? Is it a threat that they're going to lose their contract if Mary Mandel becomes the mayor, the next mayor of the village? What is the form of harassment? Well, one dictionary definition of harassment is subjecting someone to persistently offensive, unwelcomed intrusion, not criminal. It's unclear from the Facebook post what Mandel made a habit of, threatening, or what the particular form of the harassment was. A reasonable reader could conclude that he was making a habit of being persistently offensive, but nothing more, and nothing criminal. Without extrinsic facts, facts that would take the case out of the defamation per se category, the post cannot be construed as stating that Mandel had physically acted or made menacing gestures, because the very crime of assault requires something more than words. So your client won on that point, right? So your client won on that point. Your client did not win, however, on the statement that Maribel has multiple liens on her property and there's a built-in demolition order in effect. Correct. So do you want to move to that point? Well, I can't appeal that point because it's not final. I never briefed it because that claim survived. So I don't feel that I can really address you on that. But I do want to go back to what my client said about David Mandel, because there's a couple of other things here. So to be actionable within the category of crime, or the commission of category of crime, you also have to have that it be a crime involving something that is indictable and involving moral turpitude. Well, the bias held that the assault is not recognized as being in that category involving moral turpitude. And assault, at least simple assault, is a misdemeanor. So it's a standalone offense. It wouldn't be subject to indictment and it wouldn't be a felony. So even if we get past the concerns here about what the meaning of the words are, even under plaintiff's theory, it doesn't fall within the category to be actionable defamation per se. So let's move on. Mr. Reese, you're actually out of time because you said you were only going to take five minutes and you've gone about ten now. Well, if I could just have just 30 seconds to talk about it. Okay. So very briefly, then we have the whole idea of what is constitutionally protected. The words threatening and harassing do not have a precise and readily understood meaning. Maybe it means you're being a bully. Being a bully is not a crime. If it were a crime, well, okay, we'd have a lot more people in jail. Maybe that would even be a good thing. Maybe not. But it is not criminal. Secondly, as I've already said, the post lacks factual context and is not objectively verifiable because it doesn't have that type of readily understood meaning. And finally, if you were looking at the literary and social context, the post would signal to readers that the Facebook group was engaged in nothing more than personal insults and name calling. I mean, if you read some of the messages going back and forth, it simply is nothing more than another example of loose rhetoric in online spaces. We've addressed the other arguments in our brief. I want to thank the court for its time in giving us oral argument today. And for all the reasons set forth in our brief, we ask you to affirm the dismissal of counts three and four in favor of John Gardner against David Mandel. Thank you. Thank you. Thank you. Thank you. May I please report, counsel? Your Honors, I think one of the first things I should address in what time I have is going to be the jurisdictional question we've raised and the pending motion to dismiss the appeal as it relates to defendants Flores, Bernal, Berscheid, and Chokochi. This issue relates to the partial dismissal of two counts involving these defendants. As the court knows, the circuit court struck certain allegations of defamation against these defendants that were contained in counts two and three, but no decision by the court completely dismissed the defamation counts against these defendants. So the issue presented is truly whether individual alleged statements constitute separate causes of action for defamation. They are certainly not pled that way. Plaintiffs were the masters of their own complaints, and they chose to commingle and combine their defamation claims against multiple defendants from multiple statements into two counts. So the issue we see is that the partial dismissal of counts two and three against these four defendants was not a final order. And even a 304A finding, as I'm sure this court has encountered many times, neither a 304A finding nor a voluntary dismissal converts a non-final dismissal into a final dismissal. So we don't believe there's jurisdiction to address the dismissal of the certain allegations of counts two and three, because none of those counts was actually fully resolved, and no dismissal involved completely wiping out a claim against one of these parties. In contrast, count one was against only defendant Crockmull, and it was completely dismissed with prejudice. That is a final judgment. That is a final decision that was made appealable once the judge made his 304A finding. Similarly, defendant Ranieri, the claim against him in count two was completely dismissed by the judge's order. So we have two defendants who were absolutely dismissed as parties. The entirety of the defamation claims against them were dismissed. And a 304A finding ensued. So we do believe there's jurisdiction as to those two defendants. We don't believe there is as to the remaining four. We do have a motion to dismiss pending. We've asked the court to take with the court. So then I'll just move on unless the court has any questions on the jurisdictional issue. I'll move on. Okay. No questions. Okay. I'll move. And I just want to say I think the reason for this is very clear because in the case law we cited, we still have two active defamation counts against these defendants. And, in fact, the plaintiffs have refiled their lawsuit under the refiling statute 2-1117. They have refiled their non-dismissed claims against these defendants in the circuit court. So that action is now pending and stayed pending in the outcome of this appeal. And they said throughout their briefs they're still pending defamation claims against these parties. So there are still defamation counts and claims against these parties, and the judge's order did not resolve one single defamation claim against them. And courts dislike piecemeal appeals, and these defendants still could potentially be held liable for defamation based on different allegations and different alleged defamatory statements. So this is literally the definition. This will be the definition of a piecemeal appeal, particularly if that case moves forward and results in a ruling that plaintiffs then appeal. So that said, if there are no questions, I'll just move on to our argument on our prosecution under the Citizen Participation Act. As the court knows, the purposes stated behind this act were very clear. It was to remedy these strategic lawsuits to chill public participation, to silence political opponents and cases or people seeking governmental change. The court has said, you know, it's the public policy of the state of Illinois that citizens and organizations should be allowed to participate freely in the process of government and that it must be encouraged and safeguarded with great diligence. Courts, in particular, should provide the utmost protection for the free exercise of these rights. Here, the plaintiffs themselves, throughout their complaint, say these defamatory statements were made to influence this election. They have conceded also today and in their briefs that the first prong of the Sandholm test has been satisfied. I'll just go through the Sandholm test quickly. The first prong of the Sandholm v. Cooper case from the Illinois Supreme Court is that the Defendant's Acts were in furtherance of his or her rights to petition, speak, associate, or otherwise participate in government or obtain favorable government action. Plaintiffs have conceded that activity is protected activity that these defendants were engaged in. They've also not presented any evidence on the third prong under Sandholm, which is that the Defendant's Acts were not genuinely aimed at procuring favorable government action. The two of the three Sandholm prongs are absolutely conceded and established here. The tricky one is the second prong, which courts have really been incredibly restrictive in interpreting, and they have narrowed not only what the statute says. The test that has evolved cannot reasonably be inferred from the language of the statute and even cannot be inferred from Sandholm. We know particularly the Ryan case developed a prong within that second prong, which requires that the plaintiff's claims are solely based on comma related to comma or in response to the defendant's exercise of these rights. So if a plaintiff's claims are related to or in response to the defendant's exercise of rights, that satisfies the second prong under Sandholm. Somehow, the case law has developed to say, and the defendant also has to prove that in order to satisfy this prong, the defendant has to prove that the plaintiff's claim is meritless. That's based on a rhetorical comment in Sandholm. The court did not define what meritless means, and moreover, the court said we are not adjusting the merits of the claim. So the court expressly said you are not to look at the merits of the claims. So a party who says, oh, I've, you know, alleged the allegation, which plaintiff essentially does. I've stated the elements of a defamation claim. I've sought damages, so I have a legitimate defamation claim. That's exactly what the courts say is, you know, it's the baseline prerequisite. Of course, you have to file a complaint that looks like a legitimate complaint. And as the courts say. The Ryan case that you're referring to, is that Ryan versus Noah's? No, I'm sorry. It was a new versus ABC, I think. Yes, it was a news agency. I've got that little site somewhere. Thank you. Yeah, it was a new I think it may have been. It was a news reporting agency. I can pull it up quickly if you'd like that. No, that's okay. You can continue. Okay. So the Ryan case was regarded a television station's investigatory report regarding the working hours of circuit court judges. And the court found that the action, that the plaintiff failed to, or the, sorry, the defendants on the flat motion failed to establish that the action was meritless. And that's the case that really sort of took off on this whole meritless concept. And as we've cited, the Anderson versus Smith case out of the fourth district more recently has argued why the Ryan meritless test is not valid. It shouldn't be applied. It's not found anywhere in the language of the statute. And it's not found anywhere in the Sandholm decision, which is our preeminent Supreme Court decision. And I'll note, as you've probably discovered, the Anderson case is up on appeal now before the Illinois Supreme Court. The Illinois Supreme Court accepted or granted. You can agree that in that James Ryan versus the news media, I think it was ABC, was because they untruthfully depicted his house and his car home at an hour that was a time when he was supposed to be on the bench. It wasn't his house and it wasn't his car. So it's untruthful. And the gist of that story and the gist of that case was whether the media can willy-nilly just publish untruthful things and get away with it. And the Ryan case said, no, they can't. It has to be truthful. It has to be based in truth, which is really the whole basis of the complaint here. Your clients, Niko Maneri, Laura Bersheid, Kenneth Krochnow, Fernando Flores, and Brent Burtnell, and Nikki Tricosi, all made statements that allege that Maribel broke the law. And there are citations that I can give you. But she was never charged with, arrested, convicted, or sentenced for breaking any of the laws that are spoken about. She wasn't for embezzlement. She wasn't for ripping off an 80-year-old man. She wasn't for forging. She wasn't for preying on a senior. She wasn't for coercing a widow. She wasn't for being a swindler. She wasn't for theft. She wasn't for stealing the home of an elderly person. She was never convicted of any crime. So your clients, some of your clients, continue to use the word criminal, criminal, criminal. To be a criminal, you have to have been convicted of a crime. She was never convicted of a crime, ever. I understand your point, Your Honor. And I do want to say that our arguments on the common law defamation allegations are, I'm primarily going to stand on a brief on those because there are six defendants. And I think the Citizen Participation Act issue, though, has to be addressed very distinctly and separately from the common law defamation claims. The problem with the Ryan decision, even, and I agree, if somebody is flagrantly misrepresenting information and reporting it, that is not only defamation, but it can be, you know, the lawsuit could be held not to be meritless. The problem with the Ryan decision is that its analysis was to the substantive of whether it was a slaps lawsuit required the parties to prove or disprove the falsity of the statements that were made. So it requires a movement to prove their case or disprove the plaintiff's case, which the entire purpose of the Citizen Participation Act is to not force parties to litigate meritless claims or claims brought with the intent to chill or harass people who are participating in government. And that is the problem. But people who participate in government should still be held to help telling the truth. That is true, but at the stage that a Citizen Participation Act motion is brought, it is not incumbent on the defendants to litigate the merits of the claims. That's exactly what Sandholm says. We don't address the merits of the claims right now. If that were the case, then at the motion to dismiss stage, or actually earlier than the motion to dismiss stage, defendants would have to gather all of the evidence they could possibly find, have no depositions, have no discovery to disprove. Let me just ask you something. If one of your clients wants to say, Nino Ranieri says she embezzled money, you're a lawyer, you know how to search Illinois cases, you know how to search Illinois criminal cases, you know how to search whether Maribel was ever convicted of embezzling money. This is not a hard process for a lawyer. It might be a hard process for somebody who lives in San Francisco and doesn't understand our computer system or how the Illinois cases are labeled or numbered. You would have found it. You could have found it in a minute. I could have found it in a minute. You can't find it because she wasn't convicted of that. If one of your clients wants to say she was a criminal for ripping off an 80-year-old woman, she was not convicted of that crime. There's no case anywhere. There's no charge anywhere. There's no conviction anywhere. It doesn't exist. So there is no truth to the statement. Even a slap case will tell you that what you're telling people has to be true. You can't just make it up out of whole cloth, which is what your clients were doing. Well, Your Honor, I disagree with that. One of the statements that is said to have been made was that one of the clients ripped off somebody. There's no codification of ripped off. Well, there is certainly exploitation of a senior. There's certainly exploitation of an elder person.  The main problem, though. And ripping off an 80-year-old or an elderly woman could have come under exploitation. There's no doubt about that. And she was never charged with that. There is no case like that. There is no case against her like that. It is not true. It was made up out of whole cloth. Well, Your Honor, I would point to the statements you made shortly ago, which is that all of this could have been verified by a listener. There was no specific factual statement that anybody could have— No, all of it could have been verified by your clients before they said it. They could have said, we better double check. We better double check. We're going to call her a criminal. Let's just go and see if there's any cases anywhere on Google against this woman. As could any member of the public who heard the statement. But the statements were not factually specific enough for anyone to verify. Well, let's say someone has violated multiple—by different people that someone has violated different crimes in Illinois. It's not important. Your Honor, she doesn't say a timeframe, an identity of these victims, the exact crime, rip-off. There are cases in the Imperial Apparel Decision, Troy Group, Phantom Touring, Greenbelt cases that say calling someone a fraud, saying they have committed fraud, saying they have ripped someone off. They may have blackmailed someone, saying they are the biggest crooks in the world, are hyperbole, and they are inactionable. I would also point out that, you know, we have to look at each defendant's statement in itself. Some were made at actual government board meetings. Some were posed in the form of questions, and I think that matters. Some were posed to Marybel Mandel on a Facebook post. They were— Well, yeah, and I mentioned that earlier about them being posed in the form of a question when I was speaking with Mr. Serdowski. But my question to you is, is it your position that the statements are not actionable because they are opinions, because they're capable of innocent construction, because they're privileged, or some other reason? What are you telling us here? I would say, first of all, they're not factually specific enough to be verified or to even give a listener a reason to believe they're true. So let's pause for just a second. Mr. Serdowski asked you about just simply saying that this is a criminal, worst criminal we have, worst criminal politician out there. So you would say that's not actionable? Yes. It doesn't say what crime the person committed, when they committed it. It doesn't say who the victim was. Well, they embezzled, embezzled funds. This criminal embezzled funds. Well, I mean, courts have found the term fraud, someone committed fraud, not to be actionable. I don't see a big difference between fraud and embezzlement. They're both crimes of dishonesty, and there's no detail whatsoever given. Plus, the context, I mean, we do not contend that the courts created some expanded defamation privilege. But courts absolutely recognize the context of a political campaign as being one where you are going against the harsh rhetoric. And it is more imperative now than ever that people be able to speak out against government. And the fact that barely any slap lawsuits have been held to be violative of the Citizen Participation Act is concerning. And I think that the test that has been enunciated is not supportable under the case law. It doesn't exist in the language, doesn't exist in the statute, and the language doesn't exist in Sandholm. Parties should not have to prove their defense at the motion-to-dismiss phase. It's whether the complaint involves the exercise of rights protected under the act, which this one conceitedly does, and whether the plaintiff's claims are related to or in response to the defendant's actions. The plaintiffs admit that throughout their complaint. Do you believe there's a different standard here because she's an elected official? It's relevant to two things. First of all, under standard defamation common law, the comments have to have been made with actual malice. I don't even know if that's alleged. But even if it's alleged, there aren't facts to show that they were made with actual malice. Can I just ask a question? If somebody is going to say something about someone that is untrue, what would you call it except malice? Because if you don't know... Okay, Ms. Bartolucci, it would be if I said, oh, my gosh, she was sterling. She had the prettiest brown hair. It was really short. That's not malice. But if I were to say something about your professional behavior that was untrue, you wouldn't think that that was malicious? That is not how actual malice is defined, I would respectfully submit. It's disregard for the truth or knowledge of falsity. We don't have any proof that these defendants knew what they were saying was false. They probably heard themselves about the Seventh Circuit case, and they were probably, you know, acting on information that they'd heard. And they have looked up that case. And David was convicted of mail fraud and making false statements, and she was held criminally to be a criminally responsible participant. Never. If they looked at that case, they saw she was never charged or convicted or sentenced for anything that had to do with that case. Not her. So if they were looking for stuff about her that they could use in this campaign, and they looked at that case, which you just said they did, I'm going to tell you they couldn't find anything bad about her that was true. She's not a criminal because she wasn't charged for the crime. She wasn't convicted. I don't believe the case says that. You'd have to prove that she wasn't. She was found criminal to be a criminal participant. And I want to correct this. I'm not saying that the defendants made those statements after having read the Seventh Circuit decision. That was found in the course of the litigation. So I do not want to in any way have the court believe that they, before they made their statements, went out and got David Mandel's plea agreement and read it. I do not know that is the case at all. They probably heard, as many people in the community had, about David's criminal past. You have to prove that they made the statements with knowledge of their falsity or reckless disregard for their truth. So that's defamation. But the fact that she is a political person, it absolutely matters under the Citizen Participation Act. And the timing, this is what we think the judge got wrong. He said the timing wasn't a particular time of public discourse because the election had already happened. He completely disregarded the fact that Maribel was going to have to run for re-election in 2023. She filed her lawsuit in 2022. So that was an important time in terms of public discourse. She was going to be running for re-election. In fact, did run for mayor again. So it was the timing element, which courts look at in evaluating whether a case is a slap case. The timing element is absolutely satisfied, and the judge got that wrong. The other element that the judge got wrong was he believed that defendants had to prove that Plante's claims were meritless. And because he didn't dismiss all of them entirely, they couldn't meet that burden. But that burden is based on a very flawed analysis, as we believe the Anderson case has proven. And we'll see, can't wait to see what the Supreme Court says about it. Ms. Bertolucci, why did we have jurisdiction over your cross-appeal under the SLAPP Act when the court denied the motion to dismiss on that basis? Is there special jurisdiction? Well, Your Honor, we don't think you would as to the four defendants that I'm speaking of. I have stated that if there is no jurisdiction as to them because the claims against them were not completely dismissed, then there is no jurisdiction to decide the Citizen Participation Act claims. You do have jurisdiction relative to defendants Crockmull and Ranieri, and you have a final judgment as to them. So once you have a final judgment as to them, you can evaluate the Citizen Participation Act, the denial of that motion to dismiss because you have a final judgment. So it stands to those two defendants.  Because right now, they are totally out of the case. Correct. But if they're totally out of the case, isn't the SLAPP issue moot as to them? No, because if the motion had been granted, they would have been given the opportunity to pursue their attorney's fees. They were denied that opportunity because their motion to dismiss under the act was denied. So there are several other remedies that flow from the act. So as to those, but as to these other defendants, how would our decision play into that? I think that your decision could, you know, based on your conclusions about the context in which these claims were made, your rulings could become law of the case that would apply to the other four defendants down the road. Right now, I agree there would not be jurisdiction under their Citizen Participation Act motion, the denial of that motion. But if you do believe there is jurisdiction as to those four defendants, then you could obviously proceed with the Citizen Participation Act argument. But how you rule on it could impact them in the future, and they could use it as law of the case or vice versa. It could be used against them. And then I just want to make sure that I'm understanding your argument. Your point is that these words that were used, that Justice Kaczynski has said, there's crimes, crimes involved. Your point is to tell us, yes, but these statements don't directly or expressly accuse the Mendels of committing a specific crime. It's so general that it doesn't give rise to defamation per se, because per se requires some specific statements of facts around the bones to make it that one would say he or she actually committed the crime against this person by doing X, Y, and Z. But just gratuitously saying somebody's a thief does not give rise to defamation per se. That's exactly right, Your Honor. That is our position. There are no victims identified. There are no timeframes given. There aren't true crimes stated. There are general terms, and there are many, several Illinois court decisions that we've cited that use the word fraud, use the word crook, use the word ripoff, and those were all held to be inactionable. So I think the lack of specificity is the main flaw, and then the rhetorical nature, the general nature of the term also makes them inactionable. So basically you would argue that all the elements of defamation are just not present, correct?  And so if that's the case, then what do you believe here is fatally missing? Well, I believe, first, the substantial truth defense does apply, certainly as far as David. He was criminally convicted. I think it is relevant that Mary Bell was found to be a criminally responsible party, but the court's going to deal with that how it wishes. But I do think the substantial truth defense applies, and I think the specificity is truly the problem. They're just not specific enough, and the actual malice element also is missing. There's no proof that these defense made them in total conscious, reckless disregard of the truth. They learned of certain things that these plaintiffs had done, and they commented on them, and there's no evidence that they knew that they were false. That is an element. They have to show that they knew they were false. That's what actual malice is, knowledge of the falsity or reckless disregard of the truth. I don't think either of those can be established, and I also just don't think the statements are specific enough to be actionable, because nobody could go out and verify any of them, whether they wanted to or not. They couldn't find a case that acquitted or convicted these plaintiffs of any of these general ripoff, embezzler comments. As I asked Mr. Reese, those statements that survived the motion to dismiss, such as the ripoff and so forth. Am I correct that you don't feel that we have jurisdiction to touch those because they survived your motion to dismiss? Correct. It was not successful. So those stand right now.  And then your crosskill only deals with the slap as to those two defendants because you think we don't have jurisdiction over the main appeal. Correct. You are familiar with the Supreme Court's case in DeViti? I've read so many cases in the last two days, I'm sorry, which is a D-E-B-I-N-A? D-U-B-I-N-A. I'm sorry, it's not coming to me right now. Okay. Seems like I could submit a supplemental brief addressing. And this court's decision in COAL, C-O-A-L, C.O.A.L. Inc. versus Dana Hotel, LLC. Right. That's already cited though, so I apologize. I'm not immediately familiar with them. I did jeopardize my cases, but I'd love to hear what your position is. In Hudson versus the City of Chicago. Well, in all those cases, there was a similar situation as there was here where the plaintiff ultimately did a voluntary dismissal. And the question for this court and also for the Supreme Court in a few of those cases, at least one of those cases, was whether or not the court had jurisdiction pursuant to that motion to voluntarily dismiss, whether or not that created a situation where the court would have jurisdiction over all of the issues. Your Honor, I am very familiar with the case law that says a voluntary dismissal can make previous, what were previously interlocutory judgments, for instance, appealable.  Exactly. Yes. Well, appealable, but that's the difference. They're not final if they didn't fully resolve a claim. And I think the cases we discussed show how striking allegations from a count is not resolving a claim. That's correct. Okay. So that's the difference in those cases. I totally agree that the operation of a voluntary dismissal can definitely bring all prior interlocutory rulings before the court, certain ones. But in the case where a claim isn't even fully resolved, I don't think that applies. I could not find one case where that happened. And I don't think the plaintiff did. Okay. Anything else? No, thank you. I just ask that the striking and dismissals of the counts, if the court finds jurisdiction as to the four defendants, that those are affirmed. And certainly as to Defendants Crockmill and Ranieri, that the dismissals with prejudice of the counts against them, counts one and two, is affirmed. And that the court reverse the denial of the defendant's motion to dispose under the Citizen Participation Act as to all parties, if the court has jurisdiction over the four defendants we've discussed, and remand for them to pursue their attorney's fees. Thank you. And Mr. Zydowski. Thank you, Your Honor. I'm going to try to limit this rebuttal to one point in rebuttal and one point in response to the cross-review. First, with respect to the point regarding our underlying action with respect to the Common Law Defamation Council. It's not surprising that in their briefs, in their motion to dismiss, and even today in oral argument, that counsel gives short shrift to this concept that it's okay to lie. When there's public officials involved and elected officials involved. I mean, we indicated there are 25 exhibits that were unverified, unsupported, uncorroborated, and violative of Supreme Court Rule 191, that they attached to their motion to dismiss, one of which said that Maribel Sanchez, under her maiden name, was guilty of shoplifting at a CVS. And it had a picture of a mugshot that was a lady 10 years older than her with a different spelling of her name. And one of the attorneys for the defendant actually in oral argument in front of Judge Cushing said, yes, that happened somewhere in the suburbs. The concept of what they did here was not only to lie and say it's okay to lie, but then the attorneys doubled down on these lies with all this stuff in the motion to dismiss to sully the plaintiffs and say they're not worthy of protection under this situation. As has been pointed out here, Ms. Mandela has never been accused of, charged with, or anything else with respect to any crime. Yet throughout these allegations in the complaint, they are being very specific as to the crime. It's not that they're calling her that it's a hooker's come on, or that she's trashy, or that she's incompetent, or the types of things an imperial apparel say are hyperbole and loose and figurative speech. These are very specific crimes that they are accusing her of. And they hearken back, and even the court, Judge Cushing has hearkened back to three words in dicta, where even the Seventh Circuit Appeals Court says, we're not going to rule on whether this is legitimate or not. We don't even know. It comes from a pre-sentencing report. We don't even know if she is a criminally whatever participant, but we don't find enough evidence here, and it's not up on appeal, so we're not going to say that the judge's ruling was erroneous. Based upon that, Judge Cushing gave them free rein and carte blanche to go out and say that she's a murderer, a rapist, an embezzler, a forger, and anything else they would want. And that's the type of runaway expansion of the concept of substantive truth that can't be there. Substantive truth, the term and the alleged substantial truth must relate back within the context of the original statement, and none of them did here. They didn't follow the law. The judge didn't follow the law. Even though they say that that is the law, they didn't follow it. That's the bottom line with respect to the common law accounts. This is not just name-calling, and it is quite clear. If you're going to say somebody's a criminal, you've got to prove that they were convicted of a crime. Now, with respect to the underlying Citizens Participation Act, bottom line is the Supreme Court, even last year in glorioso, said if the legislature wanted to change the way the first district is ruling on this thing, if the legislature wanted to change how St. Holmes is interpreted, they had a right to do so. We believe in precedent, and we're going to do it. Well, counsel for defense now wants you guys to act as the Supreme Court and the legislature and change how you have been dealing with SLAPP cases for the last several years. Maybe the Anderson case is going to show up in the Supreme Court, and they'll have another go at it in the Supreme Court. But as of right now, this isn't a SLAPP. It doesn't fit the paradigm. It's not there. Even the concept, if we were to look at Anderson and do an Anderson analysis of what they wanted to do, they lose. All Anderson says is that to find a claim meritless, we must focus on the improper motive of the claimant of filing the suit and look at the extensive figures. You look at why we filed the suit. It's because all of these things were stated that were falsehoods. This is not to shut them up in the middle of a campaign. This is a defamation suit where damage is incurred based upon defamation a year earlier. And then to determine if a claim is retaliatory, there must be a factual inquiry to root out the true goal in filing the claim. Well, the true goal in filing the claim is that they damage your reputation, they damage your business by numerous, not just one, numerous falsehoods. When you're called, when even the attorneys think it's okay to lie in a filing, and even the attorneys think it's okay to show up in front of Judge Cushing and say to him, yeah, that's her being convicted of being charged with shoplifting at a CVS and a Marshall's. This is how they operate to sully the reputation. So we don't believe that the Citizens Protection Act, as it has been applied in the first district, and has been dealt with by the Supreme Court, Sandholm and now in Glorioso. Clearly, this has not fit that paradigm. I'm going to interrupt to say, I think we have breaking news that Anderson was decided today by the Supreme Court. So we will all read it deeply. So that's number one. And then number two, Mr. Szczarski, what about this issue of jurisdiction? You have four counts. Two of the defendants are gone, right? The other ones remain. You have various allegations against them. Counsel has said you're trying to parse out these specific allegations. Do we have jurisdiction to hear your appeal as to those remaining defendants? Thank you. That's what I was going to get to. Absolutely. And it's in our brief, in our reply brief, starting on page 9 or 10 of our reply brief. Bottom line is it's well established in Illinois law, first and foremost, that these were final orders of the judge dismissing per 2-619 and 2-615 these specific defamatory claims. Now, granted, there were multiple claims in each of these counts. They weren't cut out into 43 different counts. There were multiple claims in each of those counts. The court did not say, well, I'm going to strike your, give you a right to replead, leave out the ones that I've dismissed with prejudice, leave the other ones in. The court didn't do that. We actually asked the court to clarify it in a motion to reconsider, and Judge Cushing didn't tell us or didn't change his rulings. So each of these things, each communication, each defamatory statement pursuant to Hooks v. O'Rourke Loan Service is a federal case that we've cited, as well as the restatement of torts. When you deal with defamation, each statement, each word is a separate cause of action, a separate claim. Now, the fact that some of these claims were dismissed and others were not made the decision to dismiss those final in the January 31st order, and then they became appealable under clear, longstanding Illinois law. When we voluntarily dismissed the remaining counts, now all of a sudden those rulings that were final became appealable, which is what we appealed in a timely fashion. So the court clearly has jurisdiction to rule on everything that Judge Cushing did in the January 31st order for his dismissals per 2-615 and 2-619. Clear jurisdiction because those orders are now final and appealable. Now, with respect to the secondary situation as to what happens with the slap and the other ones that weren't ruled upon, we had a year to refile. Unfortunately, the wheels of justice turn slowly. And so this appeal still remains pending when our year was coming up. We had no choice but to refile the underlying action while this appeal was still pending. So those matters that were not dealt with by Judge Cushing in the January 31st order are now in a new lawsuit that was filed, which has stayed on the appeal call pending the ruling on this case. And depending upon what occurs, maybe there will be a happy commingling of what happens with this appeal and what happens with those matters that were not done. So you filed a new suit. Correct. We had to within one year of his voluntary dismissal. And that one year was coming up. So even though this appeal remained pending, we had no choice but to refile. But this court doesn't have jurisdiction over the issues that were not dealt with in the January 31st order. Those allegations are all re-pledged. So those undismissed allegations are in the refiled suit. Correct. The undismissed allegations that were from the original complaint have been refiled. And we indicated that these particular claims were pending a decision of the First Appellate District. The claims that we are appealing here that has been dismissed per the January 31st order. So what was dismissed by Judge Cushing January 31st, and then he verified and clarified or denied our motion to reconsider. Those became final at that point. Those claims. They became appealable when the voluntary dismissal occurred. Okay. Yes. Okay. But now that we have a new. So, isn't it normal protocol for you to refile, you re-plead, you make a footnote that says, we're doing this to preserve our appealability later versus coming to us. Now, piecemeal, and you've got a whole new complaint pending. What's going to, I mean, I guess, to Miss Bartolucci's point, I guess that this really does scream like piecemeal. Well, it isn't piecemeal. It would be piecemeal if we were able to appeal while all those other claims were still pending. The law is quite clear. Once it wasn't voluntarily dismissed, all claims are done. Doesn't that presuppose that you're still standing on that complaint and that you didn't refile anew? Well, we have refiled anew. It's just that this case, this case that's up on appeal, has not been resolved yet. We had no choice but by Supreme Court rule, by statute, actually, to refile within one year. Under the best of all worlds, this case would have been, the matters that are up on appeal would have been resolved, and the refile would have done it. But what we did with our refile is we have mentioned that there are matters and causes of action and claims that may fall back into that suit on a remand because we are currently up on appeal. So it's your position that the January 31st claims are properly before us. Is that correct? Absolutely. They became not only final, they were final, because individual claims, just because the judge didn't strike and dismiss entire, all the causes of all the counts, does not mean that they weren't final decisions. We asked the court, if you're telling us that you only stricken these and you're giving us leave to replead, the judge denied the right to replead. So the decisions of Cushing were final, made appealable by the June 24th voluntary dismissal. Justice Campbell, I just want to ask Ms. Bertolucci, do you agree with that? You're muted. Do you agree that the January 31st claims are properly before this court? No, I don't. That's the basis of our motion. I could not find any case that said, I mean, and I actually have an example I think I put in our brief. Let's say you have a negligence count that alleges failure to warn, failure to keep a property in good condition. Five breaches of the duty of care and a negligence count. And say the court strikes two of them. You still have a negligence count. And that's exactly the same situation here. You have a defamation claim based on statement one, two, three. Court has said can't recover on that one, can't recover on that one. You still have your defamation count on some of your allegations. So your argument then is that the motion to voluntarily dismiss has no impact on this court's jurisdiction. Is that correct? No, not that it has no impact. But I think it and the Rule 304A finding duplicatively gave the court jurisdiction over some of the issues. Well, I'm speaking specifically of the January 31st dismissals. Well, all of the dismissals occurred in that order. And I don't believe that the voluntary dismissal or the Rule 304A finding made non-final striking of allegations final. That's, you know, the case law is replete with statements by courts that a circuit court saying making a Rule 304A finding to a non-final judgment doesn't work. It doesn't make that decision a final decision. And I assume part of your concern is the way the complaint is written that there's these two counts with all of this into two counts. And they've been – some have been – because even the trial court's final order was not crystal clear in terms of what has happened here. Because the trial court said something to the effect is those that I did this with, is this what's going to happen? And those that I did – so the trial court wasn't able to respond to it with count one, count two, count three, count four as we would normally have. But might I say that just with respect to negligence, this is not just an allegation and a negligence claim that's part of a count. It's very, very specific, and the law is very clear in Illinois. Every single statement, defamatory statement or claim, is a separate and distinct claim and cause of action. And the judge dismissed those as final – with prejudice and which is final. So that's not like if it's one allegation and a negligence and a PI claim that gets stricken and you hold all that stuff to the end when everything is done. Every single – and when it comes to – when it comes to defamation, every single statement is a separate and distinct cause of action. There is no case law that says that that I could find. I was going to say, what is your case on that? The case – now you're going to make me dig here. I'll preempt you. Hold on. I just – I just had it. It was a federal Seventh Circuit case dealing with Illinois merits. H-U-K-I-C. Yeah. We're not bound by the Seventh Circuit. I was going to say, we have different – I understand that. We have different pleading requirements in state court versus federal court. It was dealing with – I understand, but that was – it was dealing with an Illinois matter. H-U-K-I-C versus the Rural Loan Services 588F3520. It's a 2009 case. And it was citing to the restatement of torts. So it's dealing with the restatement of torts, which is by and large been adopted by the Illinois courts as well with respect to defamation counts. Well, the restatement has, but not that rule. It's federal procedural law. This does not apply here. The case that you cited was Kakouris, which is a relation back issue about new defamation allegations that were added to a complaint that were made a year after the original defamatory statements were made. And that's the case you cited on this proposition, and it does not say what you need it to. That's something for the courts, honestly, to decide today, I think, in this case. Does a multiple basis for a defamation count when some are stricken and some are left, does that amount to a final judgment as to each basis? And I would say if you look at a negligence count, it's just a very simple framework. If you've got a liability based on a failure to warn, liability based on failure to supervise your employees, let's say. If one of those is stricken, you still, it's a separate basis for liability. The breach is a separate basis for liability. But if it's stricken, you still have your negligence count. And I think that I don't see any cases of defamation treated differently. And it's thanks to, you can also cite it to Feltmire versus Feltmire, which is a 2003 Supreme Court case, 207, Illinois 2nd, 263. I don't think that basically, basically, these are all discrete acts, each of which is independently actionable, even though those acts are put together in an overall pattern of wrongdoing. I will let the court read the cases and see what it thinks of that. We will, and we've read quite a few cases that you all have not read also. So we will. Okay. Anything further from either of you? No. No, thank you. Oh, I'm sorry. I was asking the parties in the audience. Justices, did you have more questions? Justices? Justices? No. Okay. Well, we appreciate your time this afternoon and enjoy it when a panel is fully aware of the case law and so that we truly have a discourse. It's been very enjoyable. Thank you. Thank you. Thank you all. Okay. And have a good day. Excellent, by the way, everybody. We appreciate the fact that you know your cases very well. You know the law. And we just always appreciate excellence. So thank you. Have a good day. Thank you. This matter is adjourned. This matter is adjourned.